IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER W. LEVY-TATUM | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NAVIENT SOLUTIONS, INC. | : | NO. 15-3794 |

MEMORANDUM

Dalzell, J.                                                                                               April 28, 2016

### I.  Introduction

We consider here defendant Navient Solutions, Inc.'s ("NSI" or "Navient") motion to dismiss plaintiff Jennifer W. Levy-Tatum's first amended complaint. This case involves a disputed private education loan taken out by Levy-Tatum's daughter, with Levy-Tatum listed as the co-signer. We have jurisdiction over Levy-Tatum's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

For the reasons explained below, we will grant NSI's motion to dismiss.

### II.  Standard of Review

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the first amended complaint.

### III.     Factual and Procedural Background

In August of 2014, Levy-Tatum received a letter from Sallie Mae (not a party in this lawsuit) informing her that her private education loan, identified as Loan No. 5029350002377617, was past due. First Am. Compl. ¶ 14 & Ex. C. After calling Sallie Mae, Levy-Tatum determined that her daughter, Victoria Tatum, was the borrower on the loan, and she was listed as a co-signer. Id. at ¶¶ 15-22. Levy-Tatum does not recall co-signing for the loan

and therefore believes she did not. Id. at ¶¶ 23-25. After Sallie Mae's corporate reorganization, defendant NSI, known to consumers and its customers as Navient, began sending monthly bills to Levy-Tatum. Id. at ¶¶ 31-32.

In October of 2014 Levy-Tatum paid Navient, under protest, to defer payment on the loan while she investigated how she became listed as a co-signer. Id. at ¶ 34. After requesting and receiving copies of the loan documents from Navient, Levy-Tatum learned that her signature was only a typewritten representation of her name and that some of her personal information, such as her employer and email address, was incorrect. Id. at ¶¶ 35-37. Levy-Tatum wrote to Navient questioning the validity of the documents and requesting copies of the original loan documents and the transaction history. Id. at ¶ 38. In response, Navient sent Levy-Tatum a letter explaining that, based on her claim that someone used her identity without her knowledge or consent in order to obtain a loan, she needed to fill out the ID Theft Affidavit that it enclosed. Id. at ¶ 40.

Levy-Tatum refused to complete and return the ID Theft Affidavit because she thought it was unduly burdensome and believed Navient was improperly trying to place the burden of proof on her. Id. at ¶ 41. Levy-Tatum claims that Navient has still not described how it validated her electronic signature. Id. at ¶¶ 49-50. After Navient sent Levy-Tatum a second ID Theft Affidavit, she again refused to fill it out. Id. at ¶ 52. Levy-Tatum claims that Navient has never explained why she has to fill out the Affidavit before it can begin its fraud investigation, and that it is common knowledge that other financial institutions do not require them. Id. at ¶¶ 53-54.

Navient sent Levy-Tatum a third ID Theft Affidavit, which Levy-Tatum also refused to complete. Id. at ¶ 66. Navient informed Levy-Tatum that it had updated her credit report to reflect the disputed loan and her disagreement with her liability for it. Id. at ¶ 67. Levy-Tatum believes that since Navient never gave her any information about its Fair Credit Reporting Act

investigation that it, in fact, never conducted one. Id. at ¶¶ 68-69. Levy-Tatum thereafter began exchanging letters with various Navient representatives about the disputed loan. Id. at ¶¶ 70-79.

In April of 2015, Wells Fargo Bank reduced Levy-Tatum's credit limit based on information it received from Experian regarding the disputed loan with Navient. Id. at ¶¶ 84-86. Levy-Tatum initiated an investigation with Experian. Id. at ¶ 87. In response to another letter from Levy-Tatum, Navient explained that unless a fraud investigation determined that she did not co-sign for the loan, the negative credit narrative would remain. Id. at ¶¶ 88-89. In May of 2015, Experian notified Levy-Tatum that the disputed Navient loan would remain on her credit report. Id. at ¶ 93. Levy-Tatum wrote to Experian to request that it add her statement disputing the accuracy or completeness of the information, but the updated credit report she received in response did not include that requested statement. Id. at ¶¶ 94-95. In August of 2015, State Farm Bank closed her credit card account, which Levy-Tatum attributes to the negative credit report from Navient. Id. at ¶¶ 96-99.

Levy-Tatum says the electronic signature on the loan is not hers. Id. at ¶ 104. Navient representatives have repeatedly called her at home, at work, and on her mobile phone. Id. at ¶¶ 110-15. Navient continues to call her and send invoices. Id. at ¶¶ 122-23.

Levy-Tatum initially sued Sallie Mae Bank and Navient. Those defendants moved to dismiss, and we dismissed with prejudice all claims against Sallie Mae Bank. With respect to Navient, properly known as NSI, we dismissed with prejudice Counts I and IV of Levy-Tatum's original complaint after finding that there was no private right of action under either the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 et. seq (the "E-Sign Act"), or Pennsylvania's Electronic Transactions Act, 73 P.S. § 2260.101 et. seq ("PAETA"). See Levy-Tatum v. Navient & Sallie Mae Bank, 2016 WL 75231, *5-6, 8-9 (E.D.

Pa. Jan. 7, 2016) (Dalzell, J.) ("Levy-Tatum I"). We also dismissed with prejudice her claim under Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4 et. seq, because, as mediated by Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et. seq ("UTPCPL"), it was preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq ("FCRA"). Id. at *11. We dismissed without prejudice Levy-Tatum's claims under the FCRA, the UTPCPL, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq ("FDCPA"). Id. at *7-8, 11-12. Levy-Tatum, with leave of Court, then filed a first amended complaint.

Levy-Tatum now brings four claims against NSI. In Count I, Levy-Tatum brings a negligence action predicated on NSI's alleged violations of the E-Sign Act, PAETA, and Standards promulgated by the U.S. Department of Education in light of the E-Sign Act. First Am. Compl. ¶¶ 125-63. In Count II, Levy-Tatum seeks a declaratory judgment that the loan in question is unenforceable as to her and that NSI uses predatory business tactics. Id. at ¶¶ 165-83. In Counts III and IV, Levy-Tatum renews her claims under the FCRA and the UPTCPL. Id. at ¶¶ 185-204, 206-25.

**IV.    Discussion**

NSI moves to dismiss the first amended complaint. In addition to its substantive arguments, NSI protests that since Levy-Tatum's response in opposition was untimely filed without leave of Court, it should be stricken. Def.'s Reply Br. at 1. NSI also claims that Levy-Tatum has abandoned her FCRA and UTPCPL claims because her untimely-filed response fails to address its arguments for dismissal. Id. at 4. Although Levy-Tatum's response in opposition was untimely filed without leave of Court, we will consider it for the sake of judicial economy.

A.     <u>**Count I: Negligence Claim**</u>

In Count I Levy-Tatum brings a negligence claim for violations of the E-Sign Act and PAETA. First Am. Compl. ¶¶ 125-63. NSI argues that Levy-Tatum's new negligence claim is an improper attempt to resuscitate her E-Sign Act and PAETA claims that were dismissed with prejudice from her original complaint. Def.'s Mem. at 7-8. Levy-Tatum argues that even though we previously dismissed her E-Sign Act and PAETA claims with prejudice, the lengthy provisions in those statutes designed to protect consumers from fraudulent transactions create a duty on NSI's part not to conduct its electronic business in a manner that harms consumers like her. Pl.'s Resp. in Opp. at 20.

We dismissed with prejudice Levy-Tatum's claims under the E-Sign Act and PAETA from her original complaint because those statutes create neither express nor implied private rights of action. <u>Levy-Tatum I</u>, <u>supra</u> at *5-6, 9. Levy-Tatum now attempts to revive her claims using the doctrine of negligence <u>per se</u>.

Under the doctrine of negligence <u>per se</u>, a violation of a statute may be grounds for finding that a defendant is <u>per se</u> liable. <u>Mest v. Cabot Corp.</u>, 449 F.3d 502, 518 (3d Cir. 2006). To assert a claim for negligence <u>per se</u>, a plaintiff must demonstrate that (1) the statute or regulation clearly applies to the defendant's conduct, (2) the defendant violated the statute or regulation, (3) the violation of the statute proximately caused the plaintiff's injuries, and (4) the statute's purpose is, at least in part, to protect the interests of the plaintiff individually, as opposed to the public. <u>Id.</u> (citing <u>Wagner v. Anzon, Inc.</u>, 684 A.2d 570, 574 (Pa. Super. Ct. 1996)). But in Pennsylvania a statute or regulation is not a proper basis for a negligence <u>per se</u> claim if the statute's purpose is to "secure to individuals the rights or privileges to which they are entitled only as members of the public." <u>Wagner</u>, 684 A.2d at 574. With respect to the fourth

factor, the purpose of the statute must be exclusively, or in part, to protect (1) a class of persons including the one whose interest was invaded, (2) the particular interest which is invaded, (3) that interest against the kind of harm that has resulted, and (4) that interest against the particular hazard from which the harm resulted. Congini by Congini v. Portersville Valve Co., 470 A.2d 515, 517-18 (Pa. 1983).

Pennsylvania courts have observed that both private causes of action and negligence per se claims address the question of whether the policy behind the legislative enactment will be furthered by using the statute to impose civil damages liability, and so the absence of a private right of action in a statutory scheme is an indicator that the statute did not contemplate private enforcement. Wagner, 684 A.2d at 575. As we previously held, PAETA contains no express or implied private right of action. Levy-Tatum I, supra at *9. The statute establishes the validity of electronic signatures and is concerned with commerce generally, not consumers in particular. Id. at *8-9. The same lack of evidence in the statutory text that led us to conclude that there is no private right of action under PAETA also compels our conclusion that the statute is not intended to protect a particular class of consumers. As such, the statute is not of the kind that is the proper basis for asserting a negligence per se claim.

The failure to follow a federal regulation may be negligence per se if, under state law, it may be considered the kind of regulation that can ground such a claim. Cecile Indus., Inc. v. United States, 793 F.2d 97, 99 (3d Cir. 1986). As we previously found, PAETA is a cognate legislative scheme to the E-Sign Act in that both only establish the validity of electronic signatures. Levy-Tatum I, supra at *9. The E-Sign Act contains no rights-creating language and manifests no intent to create a private right or remedy, but rather establishes that contracts and signatures cannot be denied legal effect merely because they are in electronic form. Id. at *5. As

7

such, and using Pennsylvania's criteria, the E-Sign Act and the Standards promulgated by the Department of Education, like PAETA, are not the kinds of statutes or regulations that ground claims for negligence per se.

Because PAETA and the E-Sign Act do not provide proper grounds for a negligence per se claim, we need not address the parties' additional arguments regarding the specific elements of a negligence per se claim. We will therefore dismiss with prejudice Levy-Tatum's negligence claim in Count I of the first amended complaint.

### B.     Count II: Declaratory Judgment Act

In Count II, Levy-Tatum seeks a declaratory judgment that NSI engages in predatory lending practices or business tactics and that the loan at issue is unenforceable against her. First Am. Compl. ¶¶ 165-83. NSI argues that Levy-Tatum's claims under the Declaratory Judgment Act fail because they are contingent upon her negligence claim, Pennsylvania does not recognize a common law action for predatory lending, and her claim is not yet ripe. Def.'s Mem. at 14-15.

Levy-Tatum asks that we use our power under the Declaratory Judgment Act "to declare that as a student loan lender engaged in electronic student loan transactions, [NSI] has a duty to follow the procedures set forth in the ESIGN Act, the Standards, and PAETA for the protection of consumers with respect to student loans which are issued electronically." First Am. Compl. ¶ 166. She also asks that we declare that NSI's "failure to follow the security procedures set forth in the Standards, the ESIGN Act and PAETA exposes consumers to harm and constitutes a predatory lending practice." Id. at ¶ 167. Levy-Tatum further asks that we enjoin NSI from enforcing the loan and declare the loan void as to her. Id. at ¶¶ 174, 179, 182. Finally, she asks us to declare that this alleged predatory business tactic "violat[es] the spirit of" PAETA and the E-Sign Act. Id. at ¶ 180.

8

The Declaratory Judgment Act allows us, in a case of actual controversy within our jurisdiction, to declare the rights and legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201(a). The statute is permissive, not mandatory, and so we are under no compulsion to entertain declaratory judgment actions. State Auto Ins. Cos. v. Summy, 234 F.3d 131, 133 (3d Cir. 2000) (explaining further that the Declaratory Judgment Act confers discretion on the courts, not an absolute right upon litigants). We must exercise our sound discretion in determining whether to entertain declaratory judgment actions, considering both practicality and wise judicial administration. Reifer v. Westport Ins. Corp., 751 F.3d 129, 139 (3d Cir. 2014).

The Declaratory Judgment Act is procedural: it enlarges the range of remedies available to the federal courts, but does not extend their jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). The availability of relief under the Declaratory Judgment Act presupposes the existence of a judicially remediable right. Schilling v. Rogers, 363 U.S. 666, 677 (1960). When Congress decides not to provide a particular federal remedy, the courts are not free to supplement that decision in a way that renders that decision meaningless. Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 812 n.10 (1986) (citing California v. Sierra Club, 451 U.S. 287, 297 (1981) for the proposition that the federal judiciary does not provide remedies that Congress did not intend to provide).

We agree that the Declaratory Judgment Act "does not authorize actions to decide whether federal statutes have been or will be violated when no private right of action to enforce the statutes has been created by Congress." Jones v. Hobbs, 745 F. Supp. 2d 886, 893 (E.D. Ark. 2010) (explaining that to permit such actions would evade Congressional intent to decide how to enforce such statutes and circumvent the Executive Branch's discretion in how and when to

enforce those statutes), aff'd, 658 F.3d 842 (8th Cir. 2011). We have previously held that the E-Sign Act contains no express or implied private right of action and have just now held that the E-Sign Act is not the proper basis for an action sounding in negligence per se. Levy-Tatum cannot use the Declaratory Judgment Act to seek relief for alleged violations of a statute that, in the first instance, does not provide her with either a private right or a private remedy. Similarly, with respect to PAETA, she cannot use the Declaratory Judgment Act to circumvent the Pennsylvania legislature's decision not to create any private rights or remedies with respect to that Act, especially in light of the lack of a common law cause of action for predatory lending in Pennsylvania. See, e.g., In re McConnell, 390 B.R. 170, 182 (W.D. Pa. 2008) (observing that there is no common law cause of action for predatory lending and claims for relief for predatory lending practices must be supported by some statutory basis).

Levy-Tatum also asks for a declaratory judgment that the loan in question is void as to her. First Am. Compl. ¶¶ 174, 179, 182. NSI argues that Levy-Tatum's claim for relief is not yet ripe because she has yet to complete its ID Theft Affidavit, and so NSI has been unable to review whether she can be removed from the loan. Def.'s Mem. at 15 n.2. Levy-Tatum responds that her claim is ripe because she will suffer harm if a declaratory judgment is not entered, as a declaratory judgment will clarify or change the parties' legal status and has utility to the parties. Pl.'s Resp. in Opp. at 23-24.

The Declaratory Judgment Act is confined to cases and controversies in the constitutional sense, and so there must be a real and substantial controversy amenable to specific relief through a conclusive decree: declaratory relief is only available for "concrete cases admitting of an immediate and definite determination of the legal rights of the parties." Public Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 243-44 (1952). Courts should be vigilant in avoiding

futile or premature interventions, and so controversies regarding legal rights must be ripe for determination. Id. The disagreement must not be nebulous or contingent, but rather have taken on a "fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Id. at 244.

To determine whether a dispute has matured to a point that requires judicial intervention, we consider the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. Wyatt, Virgin Islands, Inc. v. Government of V.I. by and through V.I. Dep't of Labor, 385 F.3d 801, 806 (3d Cir. 2004). A dispute is not ripe if it rests on contingent future events that may not occur as anticipated -- or even at all. Id. We evaluate ripeness by examining (1) the adversity of the parties' interests, (2) the conclusiveness of the judicial judgment, and (3) the utility, or practical help, of a judgment. Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990).

### 1.     **Adversity of Interests**

For an actual controversy, the parties must be situated such that they have adverse legal interests. Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1463 (3d Cir. 1994). There is insufficient adversity for ripeness purposes where the chance of a defendant acting against a plaintiff is a mere contingency. NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 343 (3d Cir. 2001). A party need not wait until the actual harm has occurred to bring an action, and so, in appropriate circumstances, a party may seek a declaratory judgment where the harm is threatened in the future, so long as the threatened harm is not imaginary or speculative. Tait v. City of Philadelphia, 639 F. Supp. 2d 582, 590 (E.D. Pa. 2009) (citing Steffel v. Thompson, 415 U.S. 452, 459 (1974)).

Levy-Tatum's and NSI's interests are adverse insofar as Levy-Tatum does not want to be held responsible for the loan in question and NSI currently maintains that she is a co-signer for the loan. But that does not end our inquiry because NSI's real interest is in determining whether or not it should hold Levy-Tatum responsible for the loan. NSI has maintained throughout the course of this litigation that Levy-Tatum's "refusal to cooperate with NSI in its attempts to review whether [she] can be removed from the Loan" prevents it from assisting her. Def.'s Mem. at 14. The parties do not dispute that Levy-Tatum refuses to follow NSI's existing policies and procedures in order to resolve her dispute. Id. (characterizing this refusal as willful). See also First Am. Compl. ¶¶ 41, 52, 66 (Levy-Tatum's refusals to fill out the ID Theft Affidavits provided to her by NSI).

### 2.     Conclusiveness of Judgment

The controversy must be real, substantial, and redressable through a decree of conclusive character, as distinct from an opinion advising what the law would be under a hypothetical set of facts. Tait, 639 F. Supp. 2d at 592 (citing Step-Saver, 912 F.2d at 649). A declaratory judgment granted in the absence of a concrete set of facts would itself be a contingency, although predominately legal questions may be more appropriate for judicial resolution even with a less fully-developed record. Armstrong World Indus., Inc. by Wolfson v. Adams, 961 F.2d 405, 412 (3d Cir. 1992). See also Florio, 40 F.3d at 1463-64 (explaining that there is some play in the joints with respect to concreteness because the need for a concrete set of facts is greater in some instances than others).

The absence of a concrete set of facts here strongly suggests that a declaratory judgment would improperly advise the parties as to what the law would be under a hypothetical set of facts. Levy-Tatum's obligation as an alleged co-signer of the loan in question is a highly specific

factual inquiry and not the type of predominately legal question that is somewhat more amenable to judicial resolution without a fully-developed factual record. Levy-Tatum has failed to comply with NSI's internal procedures for verifying allegations of identity theft, even though she claims that she did not co-sign the loan in question. Without the facts that could have been developed if Levy-Tatum had participated in NSI's process, the Court cannot conclusively render judgment as to the loan's validity as to her. See, e.g., Schatten v. Sallie Mae, Inc., 2009 U.S. Dist. LEXIS 42801, *18-19 (N.D. Ga. Mar. 4, 2009) (Martin, J.). In Schatten, plaintiff also sought to have her name removed as a co-signer for a loan taken out by one of her children and have the negative credit information removed from her credit reports, but she refused to fill out Sallie Mae's identify theft affidavit completely or fully cooperate with the Fraud and Loss Prevention Unit by filing a police report. Id. at *5-7. The district court found that Schatten's insistent statements that she did not co-sign for the loan were not conclusive as to whether she in fact signed and, because she refused to utilize the identity theft procedures, there were outstanding factual and legal issues to resolve. Id. at *19-20. Since further factual development was required, the district court declined to enter a declaratory judgment. Id. at *20.

Similarly, the factual record here is insufficiently developed to render this matter appropriate for judicial resolution by way of a declaratory judgment. When such a judgment requires a highly-specific factual inquiry, proceeding without a fully developed record, especially if the plaintiff herself has impeded that factual development, constitutes the type of resolution of a contingency that is improper under the Declaratory Judgment Act.

### 3. **Utility**

Finally, we consider the utility of a declaratory judgment. Florio, 40 F.3d at 1469. We examine whether such a judgment would be useful to the parties and others who could be

affected. Id. at 1470. A declaratory judgment must be of some help to the parties at the time it is made. Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1156 (3d Cir. 1995). Certainly, a declaratory judgment would be useful to Levy-Tatum, who seeks to avoid liability for the loan in question without cooperating with NSI's identity theft procedures. But that is not the type of utility contemplated by the Declaratory Judgment Act, and the Court should not use its discretion to permit or encourage litigants to use the Act to help them avoid pre-litigation cooperation in resolving disputed debts when Congress has provided extensive statutory and regulatory frameworks for addressing such concerns.

We therefore find that Count II of the first amended complaint fails because Levy-Tatum cannot use the Declaratory Judgment Act to undermine Congressional intent to not provide a private right or remedy for the E-Sign Act, nor can she circumvent the similar intent of the Pennsylvania legislature with respect to PAETA. Further, principles of practicality and judicial administration militate against the Court exercising its discretion to entertain a declaratory judgment action in a matter that is not yet ripe for judicial consideration because of an undeveloped factual record, unclear utility, and questionable adversity.

We will thus dismiss with prejudice the portion of Count II that seeks a declaratory judgment regarding NSI's alleged predatory lending practices or business tactics, but we will dismiss without prejudice the portion of Count II that seeks a declaratory judgment as to Levy-Tatum's obligations under the disputed loan. Although that question is not now ripe for consideration, we cannot say with certainty that it will not ripen in the future.

### C.     Counts III and IV: FCRA and UTPCPL

In Counts III and IV, Levy-Tatum brings claims under the FCRA and the UTPCPL. First Am. Compl. ¶¶ 185-224. NSI substantively argues that Levy-Tatum's pleadings are deficient and

these claims are fundamentally the same as the ones we dismissed in her original complaint. Def.'s Mem. at 16-17. Because Levy-Tatum did not address NSI's motion to dismiss Counts III and IV of her first amended complaint in her untimely filed response, NSI claims that she has abandoned these two claims. Def.'s Reply Br. at 4.

A party opposing a motion must serve a brief in opposition, along with any other response that may be appropriate, within fourteen days after service of the motion and supporting brief. Loc. R. Civ. P. 7.1(c). Absent a timely response, we may grant a motion as uncontested except as provided by Fed. R. Civ. P. 56. Id. Levy-Tatum's response in opposition was filed two weeks after this deadline. See Def.'s Reply Br. at 1 (explaining by reference to the docket that Levy-Tatum's response was due on March 7, 2016, but not filed until March 21, 2016).

In addition to being untimely filed without leave of Court, the response does not address NSI's arguments with respect to Counts III and IV of the first amended complaint.  This Court has previously treated a plaintiff's failure to address a defendant's arguments for dismissal as an abandonment. See Jackson v. J. Lewis Crozer Library, 2007 WL 2407102, *6 (E.D. Pa. Aug. 22, 2007) (Stengel, J.) (granting defendants' motion to dismiss the punitive damages claim because plaintiff did not address defendants' motion with respect thereto and that portion of defendants' brief was therefore found to be uncontested). See also Griglak v. CTX Mortg. Co., LLC, 2010 WL 1424023, *3 (D.N.J. Apr. 8, 2010) (Cooper, J.) (explaining that the failure to respond to a substantive argument to dismiss a count when a party otherwise files a response in opposition will result in a waiver of that count); Duran v. Equifirst Corp., 2010 WL 918444, *3 (D.N.J. Mar. 12, 2010) (Martini, J.) (agreeing with defendant that plaintiffs waived those causes of action that defendant moved to dismiss but that plaintiff failed to address); Marjac, LLC v. Trenk, 2006 WL 3751395, 5 n.3 (D.N.J. Dec. 19, 2006) (Greenaway, J.) (citing cases to support

the Court's treatment of plaintiff's 42 U.S.C. § 1983 claims as abandoned because plaintiff failed to address defendant's motion to dismiss with respect thereto).

We thus find that Levy-Tatum, by filing a response in opposition to NSI's motion to dismiss that addressed some, but not all, of NSI's arguments, abandoned those claims upon which she failed to make any substantive arguments, and those claims are therefore waived. We will therefore dismiss Counts III and IV of the first amended complaint with prejudice.[1]

## V.     Conclusion

We will dismiss Counts I, III, and IV of the first amended complaint with prejudice, as well as that portion of Count II seeking a declaratory judgment with respect to NSI's alleged predatory lending practices or business tactics. But we will dismiss without prejudice that portion of Count II seeking a declaratory judgment with respect to Levy-Tatum's obligations under the loan, as that question could become ripe at a later date. An appropriate Order follows.

BY THE COURT:

/s/ Stewart Dalzell, J.
Stewart Dalzell, J.

---

[1] We are also persuaded by NSI's arguments that (1) Levy-Tatum's FCRA claim fails to plead facts, accepted as true, sufficient to demonstrate that NSI's investigation was unreasonable, and (2) her UTPCPL claim is fundamentally the same as the prior UTPCPL claim that we dismissed in Levy-Tatum I, supra. Def.'s Mem. at 17-19.